Good morning, Your Honor. My name is Mayra Sun and I represent the appellant Victor Berrelleza-Verduzco. This case presents something of a perfect storm. We first have what we argue is a Rule 11 error in the government's silence about a package plea provision in the agreement. Well, it wasn't, I mean, the district court had the plea agreement before him, did he not? And there's a specific provision in that plea agreement that says it's a package deal. Yes. And as I read the transcript, the court went through various paragraphs, but for some reason, didn't make inquiry with regard to the package plea. So it was either an oversight or it just wasn't an issue at that point. I'm not sure how it couldn't be an issue under Caro. The court asked your client whether, you know, whether any threats had been made against him and the client said no. But, Your Honor, United States v. Caro talks about the particular dangers of a package plea provision, how it can benefit one defendant over another. And so one must be careful. But does it? That requires, well, they use words like they ask that courts engage in a more careful examination of voluntariness. But does counsel have an obligation to raise that issue if the defendant is truly feeling pressured by the package nature of the agreement? I mean, there's a fault on both sides here. Yeah. Neither lawyer said a word. Neither lawyer said a word, but the only case that tells us someone has to say something is Caro, which says that the government should. And I thought hard about why that should be, Your Honor. The government obviously has a great interest, both sides do to some degree, in the valid plea that has all of the earmarks of a decree that establishes voluntariness. What do we make of the fact that this plea was preceded by nine hours of negotiations overseen by Judge Martinez? What I make of it, Your Honor, is that when my client had his chance to talk about it, he regarded it as a nine-hour hearing at which he was, quote, unquote, pressured from every side. Well, it's more than a hearing. The evidence was that there were drafts of the plea agreement that were revised during the nine hours while Judge Martinez was. And the only change that was made, Your Honor, was one that arguably is against my client's interests. It took out his brother's name as having been involved in a particular bit of conduct. All it did was take out. I'm not sure I understand the importance of that. There was a provision in the plea agreement, Your Honor, that discussed. Can you point me to the provision? Yes. In the plea agreement, it would be paragraph 8, which is the statement of facts, subparagraph D. D as in David? D as in David. Defendant further admits that on or about March 29, 2012, in Utah, he, and then they crossed out some words, possessed in excess of one kilogram of heroin. And what that did was take out any co-possessor. And it's on the record, it's in the record, that what they did was take out his brother's name. His lawyer, that's the one thing his lawyer pointed out. I guess the question, I'm still not sure I understand your point. Okay, so he doesn't want to name his brother as the person who was with him in Utah with all the dope. But that's perfectly understandable. But if the dynamic of the plea negotiation, including a settlement conference, is the protection of one defendant's interests, perhaps to the detriment of another defendant's interests, that's exactly what the disadvantage of a patent would be. Why can't I just look at that as saying I didn't want to finger my brother? Well, but it also means that he is admitting that he solely possessed one kilogram of heroin. And that is more adverse than if he had. But he's charged with conspiracy. And in paragraph C above, it talks about various co-conspirators possessing and storing methamphetamine and heroin. Right, Your Honor. I'm not sure that change is able to bear the weight that you're asking it to bear. Well, I look at everything in the record, Your Honor, which is what the court in Dominguez Benitez said we should look at. And so let me go back. Let's get back to the question we started with. And that is, is it your position that the district court committed reversible error because it had a sua sponte obligation to query the defendant with regard to the package plea in the silence, in the face of silence by both counsel and the response, no, if there were any other threats or promises made to the defendant? How does that render the Rule 11 colloquy constitutionally inadequate? Well, Caro talks about how the district court in that case as well engaged in a colloquy with the defendant about his voluntariness and whether the plea was voluntary. Let me see. In Caro we have the court saying that he had inquired about the voluntariness of the plea with the defendant. And, you know, we've all been at a lot of these changes of plea, Your Honor, and it's pretty standard for a judge to simply ask the question, were there any threats or promises made to you? That's a pretty standard kind of sentence. If that were the only thing that were necessary in a package plea case, then we wouldn't have had Caro. The whole rationale behind Caro is that there's a risk, there's a particular kind of threat or promise that's coming that influences the defendant's decision to plea. And, counsel, I think your reading of Caro I agree with. That is what the case says, but that case was before Vaughn. Right. So if you could talk to, Caro clearly says that I was in AUSA, I had the little checklist, and if package deal, make sure you tell the judge. I remember checking that little box on it. That was all before Vaughn. Right. So if you could talk to us why, assuming there was Caro error here, why is it error after Vaughn in light of two facts I'd like you to address. First, the fact that there was a parochial in the plea agreement that did state it. And then, second, the fact, unlike Caro, in Caro we had a situation where I believe he wrote a letter to the court I've been pressured because I'm pleading guilty as part of this package deal. And I understand your reading of the record to suggest maybe that's what was going on, but I think you can see we don't have anything as clear as we did in Caro. We don't. And that gets us to this issue of the standard of review a little bit, Ron, because Caro seemed to apply harmless error. It talked about how the court couldn't be sure beyond a reasonable doubt. And Vaughn and Dominguez-Benitez talked about Rule 11 error being plain error if it was unraised before. And the trouble is I think of this kind of Rule 11 error as being different in kind than the Rule 11 errors that were raised in Dominguez-Benitez and Vaughn. If we can think of a voluntary plea as having ---- Trying to address in Vaughn? In other words, we want to clarify the standard under Rule 52? Well, you know, Your Honor, Rule 11, we all know, has gotten into ---- Rule 11 itself has gotten encrusted with things, checklists of things that district courts must go over. And what I think is this, that a voluntary plea has sort of two axes. One has to do with ferreting out ---- One has to do with giving a defendant notice. And a lot of the things in Rule 11 that everybody has to make sure are said have to do with notice to a defendant. What a package plea provision and what the kind of inquiry that we're saying the court has to conduct that is separate, it goes to the other aspect of voluntariness, which is an absence of coercion in the decision to plead guilty. And that, Your Honor, is the kind of inquiry that I would say is not something that's subject to a checklist. And when we have a package plea deal, it seems to me that it does automatically have to be discussed in the plea column. But I thought you were arguing that it's, in essence, a higher standard of ---- Not a higher standard. They're just two aspects of voluntariness in establishing the validity of the plea. But Vaughn says we apply harmless error, does it not? Well, again, I do think both of the errors in Dominguez-Benitez and Vaughn had to do with more notice. One was about did the defendant know that he would not be permitted to withdraw his plea if the court didn't follow the government's recommendation. And I think the other one, which was about whether he knew he had the right to counsel at trial. Let me just try to understand how Vaughn would be applied here. Would the question be whether the district court abused its discretion in finding voluntariness? What I think is that Vaughn talked about a Rule 11 colloquy in which if the defendant didn't preserve the error, plain error would apply. So the defendant would have the burden of showing that there is a reasonable probability that he would not have entered the plea but for the Rule 11 error. And what we're saying is that in the case of the absence of a package plea colloquy, that harmless error should apply, that that burden should be allocated to the government to demonstrate harmlessness beyond a reasonable doubt. Even if it's not raised to the district court? Even if it's not raised to the district court, because this kind of error is different, because it goes to ferreting out coercion. But then I go back to the question I started with, and that is if there's an express paragraph in the plea agreement and counsel represents that he's gone over that agreement carefully with the client, and the client then says there are no other threats or promises beyond what's contained in the plea agreement, what is the district court supposed to do in that case that you contend constitutes reversible error? Well, I think what will happen is if a defendant has in fact been coerced, and I know I'm about to run out of time, but I do want to answer that question. If a defendant is like my client and he says, you know, I was pressured from all sides at this settlement conference, then I think that that presents a couple of possibilities. When we're talking about coercion from other defendants that affects your decision to plead guilty, there are a couple of scenarios that I was thinking about. One is that what happens, especially in cases like this one, where there are many, many defendants and sometimes defense counsel are working together in a group. And the whole point of a package plea that those defense counsel arrive at, for whatever reason there's a decision perhaps to subsume the interests of one defendant in favor of the concerns of another. That's the whole problem with a package plea. It's important to make sure that the defendant who goes along with that is okay with giving up, for example, the chance to say that I wasn't the only one in possession of this heroin. And what we have here is that my client didn't have an opportunity because his counsel, if his counsel were in that scenario working with other defendants and saying this is the best we can do for all of us, then that lawyer is not going to have the same interest in asking for a package plea colloquy. Thank you. We'll hear from Ms. Bruner. Thank you. Helen Bruner again for the United States. In this case, I don't think that there is any error. The district court did, in fact, conduct a very detailed and thorough colloquy, Rule 11 colloquy, and did ask the defendant in this case whether he was entering his guilty plea, based on whether there were any threats to him, whether there was any promises made to him that were not reflected in the plea agreement itself. Cairo certainly says that the government should bring the interlocking nature of pleas to the attention of the court. I would certainly concede we didn't at the hearing make special mention of that, but, of course, it was in the plea agreement itself. But I think even the question I have on that is Cairo was a little different because it appeared the judge was unaware of it. We don't have that circumstance. But Cairo also suggests because if you do have the package deal, the voluntariness inquiry should be more searching than one might see from the standard checklist. Did anybody threaten you or were any promises made? So I would appreciate your response to that because here you had what was a fairly standard voluntariness inquiry. I would agree that the inquiry was pretty standard. Cairo, however, doesn't give us any sort of hint as to what additional the court might ask. And I think in the context of this case where the defendant has made some changes to his plea and shown throughout the colloquy that he was well aware of what he was entering and why he was entering it, I don't think more was required. I would point out one thing about Cairo when we're talking about Cairo. In Cairo, what makes this case different, I think, is that the defendant did move to withdraw and asserted threats by his co-defendants in order to have him enter this interlocking plea. I think what gets lost in all of this is that people make decisions all the time. Courts have routinely approved decisions where someone has pleaded guilty perhaps to something that was not as favorable to that person in favor of a better deal for their co-defendant who may be a family member. That's permissible and not necessarily a threat. So in Cairo, you had very distinct allegations made by the defendant that the court then didn't have a further inquiry into, and that's where this case is very different because we don't have that kind of an allegation. And in Cairo, I might add, it was simply remanded for a further hearing into the defendant's motion to withdraw. And here I would point out a couple of things. With respect to claims now that he felt pressure on every side, we have a defendant here who never said this before his sentencing date. And in the interim between his guilty plea- Cairo had written a letter or filed a motion to withdraw. Cairo had filed a motion to withdraw. This defendant, in contrast, and two months after his guilty plea, writes a letter to the judge saying, you know, I'm not only am I guilty, I wish I pled sooner. And then goes on to talk about he wishes he pled sooner because he would have gotten a better deal. He comes to court the morning of sentencing, and his counsel stands up and says at that point in time that he may want to withdraw his guilty plea and that he was unhappy with her representation. And when the court asks him very specifically, well, Mr. Verolese-Brodusco, why do you want to withdraw your guilty plea? The defendant doesn't respond that he was threatened or pressured in any way. What he responds is that his counsel didn't bring him the pre-sentence report before she had filed objections or a sentencing memorandum. He doesn't even address the court's question as to why. And then the court goes back and asks him a second time, and it is that point he said, well, I felt I was confused. I felt pressure from every side. They're telling me that I should take the deal. My lawyer told me I should take the deal. And he goes on to list the various options he had at that time, and primarily is complaining about the options that the government had given him in the length of sentence. So I don't think you can take from that that he was even feeling pressure and that there is any reason to equate this case with Cairo. What do we do with the fact that the court at that point offered him a continuance and extra time, but he declined and asked to proceed with sentencing? Your Honor, I think he, at that point, much like, I mean, that goes somewhat to the second issue that is raised. Much like, by that I mean the question of whether or not he should have had substitution of counsel, those cases talk about whether the defendant has, whether the court has made sufficient inquiry to figure out whether there's a conflict and whether or not there's a sufficient, if you will, satisfying of the defendant that the situation is one that he can go forward with. And here the court made further inquiry and had him, told him he could have a continuance, told him that anything he wanted to have considered by the court could be considered at that hearing. And he made the affirmative decision to go forward at that point. He didn't pursue the idea of withdrawing. He didn't suggest at that point that he was threatened by his brothers. And I would also note that in the plea agreement itself, while counsel points to the possession issue, the defendant pled guilty to three, to four separate counts of conspiracy, different conspiracies. So the possession, whether he possessed it or not on that date, really is kind of irrelevant because it would have been subsumed. That amount of drugs was part of the conspiracy. And with respect to the conspiracy, there's one other interlineation in the facts section, and that relates to whether or not he had a leadership role in the conspiracy. And the interlineation simply removed his brother's name and said, Mr. Victor Barrales of Rodusco and others led the conspiracy. So he didn't make changes that ultimately hurt him. Now, counsel, in light of Vaughn and Caro together, I'm curious what the government's position is. If there is a package deal and it's referenced in the plea agreement, but it's not mentioned, like what happened here, it's not mentioned affirmatively in court, is the government's position that there ever can be plain error in those circumstances? Well, Your Honor, I don't think there would be plain error under those circumstances where the court has made inquiry to satisfy itself that the plea was voluntary, and the court did here. And there's no reason. Let me just ask you about that because it's rare that we would ever see a plea colloquy where there wasn't some inquiry by virtue of judges having in their head that that's one of the things they have to ask. So are you saying that as long as there is some inquiry into voluntariness, then in response to Judge Owen's questions, there would never be plain error? That would be my position, Your Honor. And the reason I say that is the distinction I'm making here with Caro is if, similar to Caro, there was a true motion to withdraw as opposed to what seems like I'm unhappy, you didn't talk to me soon enough, I'm concerned that, and the letters to the court and the colloquy with the court all go to, I was concerned that the things that I wanted you to hear for sentencing were not going to be brought before you. Under those circumstances, then the defendant could certainly litigate the question of a motion to withdraw. Was there a question of threats here that should have been raised? But we don't have that. So in that context, we have a perfectly valid colloquy. And since the court has never said that you have to ask specifically, you know, I thought a little bit about what could the court have asked here. The court, I suppose, could have said, well, you have a plea agreement with other defendants. Were you pressured? And that's, at best, I think what the court could have asked. And whether the defendant would have then. But isn't that the concern that the Caro case spells out, is that if someone comes up to me and says, well, Mr. Owen, you can plead guilty and your wife won't get prosecuted and that's the deal, that that's a certain heightened pressure on me that was normally not present. So that's why I'm trying to understand, is it the government's position that after Vaughn, Caro really is gone? Honestly, what's left of Caro post-Vaughn? I guess what's left of Caro post-Vaughn, in my view, is that if there is a subsequent claim that there were threats, that the court would have to make an inquiry. But I don't think that in the absence of any sort of real claim here that you can get plain error. I see I've run out of my time. Thank you. Thank you. Your Honor, can I? You may have a minute, yes, for rebuttal. To get back to the standard of review, the other thing I wanted to call the Court's attention to is Davila v. United States, which is the case that came out last year. And there was a comment by the Court that I think matters here. It said this was a case involving judicial involvement in plea negotiations. And it said that if the plea, that was a case where the defendant pled three months after the improper judicial comments. And the Court said, you know, if this plea had been entered immediately after the improper exhortations, as they called them, then it doesn't really matter what the standard of review is. Everybody seems to agree that that would be prejudicial. That's what we have here. So that's why we think that even a plain error standard is satisfactory. So I understand the local rule has been rescinded. Are there no more judicially supervised? I think the government is not doing them. Ms. Bruner can speak to that better than me. The government is not doing them. So we're not doing them anymore after 30 years of doing them in this district? I don't know if they were done for 30 years. Maybe Ms. Bruner can just respond to us. Yeah, I mean, I was just curious. So we would know because this has been a long history. Yeah, I mean, we've been doing this for a long time. I would say probably since, if memory serves me, and it's been a while since I've looked precisely at the date. I think it was incorporated into local rule in 1996. And it was abrogated in last January. I know, but we started doing them in the 1980s. I'm just referring to the local rule itself. Right, right, right, right. Okay. All right, well, thank you both for your arguments this morning. United States v. Berlusco is submitted.
judges: McKeown, Tallman, Owens